UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES HARRINGTON,

    Plaintiff,

v.                                                    Case No. 23-cv-10794
                                                    Honorable Victoria A. Roberts

PNC BANK, N.A.,
and JOHN DOE,

    Defendant.
_____/

## ORDER GRANTING PNC BANK'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 7]

**I. Introduction**

James Harrington filed an amended complaint against PNC Bank, N.A. ("PNC") and John Doe. Harrington claims PNC violated M.C.L. § 440.4601 *et seq.* when it processed a wire transfer for $215,000 from Harrington's account to an account belonging to John Doe (or the "Scammer") under the name "Smith Cleaning Consulting LLC," Harrington did not intend to pay Smith Cleaning; he intended to transfer money to an account owned by "Car Gurus."

Unfortunately, Harrington was the victim of a scam and believes PNC is at fault for processing the transaction. He seeks damages and injunctive relief.

1

PNC moves to dismiss Harrington's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. PNC says Harrington's request for damages fails under the Uniform Commercial Code ("UCC"), as adopted by Michigan. PNC also moves to dismiss Harrington's request for injunctive relief, asserting that because Harrington's claim for damages fails, his request for injunctive relief cannot stand.

The Court agrees with PNC and **GRANTS** the motion.

## II. Background

Harrington is a car collector who found a deal to purchase a vehicle from the Car Gurus website for $215,000. Harrington contacted his broker, Chris Lutomski, to effectuate the transaction. After receiving correspondence from whom he believed was Lutomski, Harrington authorized ChoiceOne Bank ("ChoiceOne") to transfer $215,000 from his account to a PNC account. Harrington submitted a payment order. In that order, he provided a name (Car Gurus) and an account number (ending in 7748). ChoiceOne and PNC completed the wire transfer on Thursday August 18, 2022.

On Saturday August 20, 2022, Lutomski contacted Harrington because the car listed on the Car Gurus website was not available, and he

could not complete the transaction. At some point Harrington figured out that not all of his communications had been with Lutomski.

Harrington realized he was the victim of a scam and called PNC's "report a fraud" number, but the office was closed for the weekend. He then emailed PNC to report the fraud and requested that PNC immediately block all activity in the account ending in 7748.

On Sunday August 21, Harrington contacted ChoiceOne to report the fraud. On Monday, August 22, after some investigation and assistance from the Federal Bureau of Investigations and the Department of Homeland Security's Immigration and Customs Enforcement division, ChoiceOne learned that the owner of the 7748 account had already withdrawn at least $214,000 by mid-day Monday. ChoiceOne also discovered that the account belonged to Smith Cleaning Consulting LLC, not Car Gurus, as the wire transfer payment order instructed. ChoiceOne shared the information with Harrington.

Harrington also learned that Morgan Noble owned Smith Cleaning Consulting LLC, and that Noble was the organizer of over 1,000 business entities. Harrington says Noble owned other bank accounts that were closed for fraudulent activity. He says PNC failed to conduct proper due

diligence and discover these issues before allowing Noble to open another account.

Harrington asserts that PNC knew when it received the wire transfer on Thursday August 18th that the 7748 account number did not belong to Car Gurus and that it did not even have an account under that name. Harrington also claims that PNC failed to freeze the funds in the account after he notified it of the fraud.

## III. Law

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). The complaint need not be detailed to survive a 12(b)(6) motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555 (2007). However, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662(2009) (quoting *Twombly*, 550 U.S. 544 (2007)).

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). In making its determination, the court construes the complaint

in the light most favorable to the plaintiff, accepting its allegations as true and drawing all reasonable inferences in favor of the plaintiff. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## IV. Analysis

This case centers on the provisions in Article 4A of Michigan's UCC concerning wire transfers. Before discussing Harrington's request for damages and injunctive relief, the Court summarizes the relevant portions of the UCC.

### A. Wire Transfers under Michigan's UCC.

When initiating a wire transfer, the originator provides the bank with a payment order containing at least: (1) the amount to be transferred, (2) the transferee's account number, and (3) the name associated with the transferee's account. Banks must rely on the information in the authorized payment order to complete a wire transfer. M.C.L. §440.4702.

When a payment order includes the account name and account number, banks have no duty to check if the account name and number match; they are free to rely on the account number alone to process the transfer. § 440.4707(2)(a). If the bank elects to rely on an account number, it is only liable for loss if (1) the account number refers to a nonexistent or unidentifiable account; or (2) the bank possesses actual knowledge that the

5

account number identifies one person while the name provided in the payment order identifies another (i.e., a "mismatch"). §440.4707(1),(2)(b), § 440.1202 (defining "knows" as actual knowledge).

The parties mostly agree on the governing law. At issue is whether Harrington pleads enough facts to survive dismissal. None of his theories is persuasive.

### B. PNC Relied On The Account Number, Which Referred To An Existing And Identifiable Account.

Harrington theorizes that since PNC did not have an account open in the name of Car Gurus, the name he provided referred to a nonexistent person in PNC systems, and PNC improperly completed the transaction. [ECF No. 8, PageID.173].

This theory fails. PNC had no duty to rely on or consider the account name in the payment order since it could rely solely on the account number by statute. § 440.4707(2)(a); *See also Kirschner v. Wells Fargo Bank*, No. 21-10785, 2021 WL 5545957, at *2 (E.D. Mich. July 19, 2021). Since the account number did refer to an existing and identifiable account, PNC permissibly completed the transaction.

When a bank elects to rely only on the account number, the relevant question is only whether the account number identifies a nonexistent or

6

unidentifiable account. *See* §440.4707(1) (stating that the information provided cannot identify "a nonexistent or unidentifiable person *or account*"). Account 7748 existed and was an identifiable account.

### C. It Does Not Matter That PNC Did Not Have An Account In The Name Of Car Gurus.

Harrington also theorizes that PNC had actual knowledge of the mismatch because PNC did not hold an account in the name of Car Gurus. [ECF No. 8, PageID.170]. This theory fails for a few reasons.

First, Harrington's complaint fails to allege facts that support his conclusion that PNC had actual knowledge of the mismatch. Harrington merely offers two conclusory statements asserting that PNC had actual knowledge of the mismatch. [ECF No. 5, PageID.43, ¶28]; [ECF No. 5. PageID.45, ¶42]. His assertions without supporting facts are not enough to survive dismissal.

Even if the Court considered these assertions, Harrington's theory still fails because he again assumes PNC needed to consider the account name. It did not.

Lastly, to accept Harrington's position and find that PNC knew of the mismatch because it did not have an account named Car Gurus would hold PNC to a constructive knowledge standard; i.e., PNC could have

discovered the mismatch therefore, it must have known of it. But the statute makes clear that a bank must possess actual knowledge.

It does not matter if the facts suggest that PNC could have known or should have known of the mismatch. Harrington fails to allege facts in the complaint which support his position that PNC actually knew. *See* § 440.1202.

### D. PNC Completed The Transaction Before Harrington Reported The Fraud.

Harrington argues that the wire transfer was not complete until PNC notified the beneficiary Scammer that the account had been credited. Harrington says that notification did not come until after he reported the fraud. He points to no factual support for this conclusion which—if supported—could keep his case alive.

A bank is only liable if it knows about the mismatch before it completes the transfer. Under Article 4A, fund transfers can be deemed complete in a few ways. Generally, the transfer is considered complete when the beneficiary's bank accepts the payment order. § 440.4604(a); 440.4709 (2)(b); *First Place Bank v. Olympia Logistics & Servs.., Inc.*, No. 11-13542, 2013 WL 1122559, at *5 (E.D. Mich. Mar. 18, 2013).

A bank giving the beneficiary notice that the funds are available can also signal completion. *Id*. But even if there is no notice, the transaction is deemed complete if the funds are made "otherwise available" to the beneficiary. *Id.* (citing *First Sec. Bank of N.M.,* 215 F.3d at 1158.); § 440.4905(1).

Harrington says a transaction is not complete until the bank notifies the beneficiary. [ECF No. 8 PageID.175]. He argues that since the Scammer did not withdraw most of the funds until after Harrington reported the fraud, it can be reasonably inferred that PNC notified the Scammer after Harrington reported the fraud. *Id*. Under this theory, Harrington alleges that PNC must have known of the mismatch before it completed the transaction.

This reasoning is flawed. For one thing, Harrington overlooks other criteria for deeming a transaction complete. Article 4A makes clear that notice is not the only avenue. Harrington fails to adequately discuss those other avenues, one of which is clearly satisfied, i.e., § 440.4604(a), which deems a transfer complete when the beneficiary's bank accepts the payment order. It is uncontested that PNC accepted the payment order and deposited the funds into the 7748 account on August 18. [ECF No. 5, PageID.40 ¶11].

Even if the Court only relied on notice to determine when the transaction was complete, Harrington fails to allege facts which allow the court to rule in his favor.

Harrington's notice argument centers around what came first: his notice of fraud to PNC or John Doe's receipt of notice and access from PNC. The timing is critical; and Harrington believes his notice of fraud came first. But the complaint fails to allege facts to support his sequence of events.

According to the complaint, ChoiceOne told Harrington most of the funds were gone by August 22. [ECF No.5 PageID.41 ¶18]. Harrington seems to interpret that statement to mean that PNC gave John Doe notice and access to the funds on August 22, and he withdrew the funds on the same day. And because Harrington reported the fraud on August 20 he asserts that his notice of fraud to PNC came first. [ECF No.8 PageID.175].

The problem with Harrington's timeline is it relies on his misunderstanding of ChoiceOne's statement. ChoiceOne did not say funds were gone on August 22; it said most were gone by that date. The parties are not clear on when the funds were actually withdrawn, so the Court cannot establish a timeline without speculation. While courts may draw

10

reasonable inferences, they may not rely on speculation in the absence of facts.

No allegations support a conclusion that this wire transfer was not completed until after Harrington reported the fraud.

### E. The pleading standard in *Bledsoe* does not apply because Harrington is not accusing PNC of fraud.

Citing *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007), Harrington argues that his complaint need only generally allege that PNC knew of the mismatch. His reliance on that case is misplaced.

*Bledsoe* concerns the pleading standard when a party brings a fraud action against a corporation under the False Claims Act. In that case, the Sixth Circuit applied Fed. R. Civ. P. 9(b), which lowers the specificity required at the complaint stage in fraud cases for conditions of a person's mind, such as knowledge.

*Bledsoe* applies to fraud cases. This is not that, even though there are elements of fraud pled. Harrington does not allege that PNC engaged in fraud. He claims the bank violated state law when it deposited funds into the 7748 account. The *Bledsoe* pleading standard is inappropriate.

The Court **DISMISSES** Count I.

### F. Harrington Request For Injunctive Relief Cannot Stand Alone.

Count II of Harrington's complaint requests injunctive relief pursuant to Fed. R. Civ. P. 65. He asks the Court to compel PNC to disclose the identity of John Doe.

Injunctive relief is a remedy and not a cause of action. Since his cause of action is dismissed, his request for injunctive relief fails.

## V. Conclusion

The Court **GRANTS** PNC's motion to dismiss **WITHOUT PREJUDICE**.

**IT IS ORDERED.**

S/ Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: July 27, 2023